

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-21-00140-CR

KEVIN CHARLES JONES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 1
Hunt County, Texas
Trial Court No. CR1900558

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Justice Stevens

*Jack Carter, Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

Kevin Charles Jones pled guilty to driving while intoxicated (DWI) with a blood alcohol concentration of greater than or equal to 0.15, and the trial court placed him on community supervision for fifteen months. After allegedly violating several conditions of his community supervision, the State filed a motion to revoke. Following the hearing on the State's motion, the trial court found the allegations against Jones to be true and sentenced him to 365 days' confinement in jail. Jones appeals, maintaining that the trial court erred in revoking his community supervision because the State failed to prove that it used due diligence in attempting to apprehend him after the trial court issued a warrant for his arrest. For the reasons below, we affirm the trial court's judgment.

## I. Background

On January 23, 2020, Jones entered a guilty plea to the offense of DWI with a blood alcohol concentration of greater than or equal to 0.15. The trial court sentenced Jones to 365 days in the Hunt County Jail and ordered him to pay a $1,250.00 fine, court costs, and a reimbursement fee of $1,940.00. The trial court then suspended Jones's sentence and placed him on community supervision for fifteen months. As conditions of his community supervision, the trial court ordered Jones to, among other things, pay supervision fees, a fine, and court costs and to report to his community supervision officer. It also ordered Jones to complete a DWI education program within 180 days of the entry of the judgment against him. About four months later, the trial court ordered Jones to submit to a substance abuse evaluation within thirty days and to attend and complete a DWI Victim Impact Panel within ninety days.

2

On November 13, 2020, the State filed a motion to revoke Jones's community supervision, alleging that he violated the following conditions of supervision: (1) failed to pay court costs, fines, and attorney fees; (2) failed to pay community supervision fees during 2020 for the months of March, April, July, August, and September; (3) failed to submit to substance abuse evaluation and participate in any treatment as determined by his community supervision officer; and (4) failed to complete a twelve-hour DWI education course. On that same day, a warrant was issued for Jones's arrest.

On December 3, 2021, Jones filed a motion to dismiss, arguing that, despite the issuance of the November 13, 2020, arrest warrant, he was not apprehended and booked into the Hunt County Jail until August 10, 2021. According to Jones, that lapse in time was directly related to the State's failure to use due diligence in apprehending him. On the same day that Jones filed his motion to dismiss, the trial court held a hearing on the State's motion to revoke his community supervision. After hearing the allegations against him, Jones entered pleas of not true.

In support of its motion to revoke, the State presented the custodian of business records for the Hunt County Community Supervision and Corrections Department, Allison Patterson, who testified that Jones had violated the conditions of his community supervision by failing to pay a fine, failing to pay supervision fees, failing to submit to a substance abuse evaluation, and failing to complete a DWI education course.

Patterson also testified that she had initially met Jones in February 2020. Patterson had a post office box number for Jones, his physical address, and a telephone number in which she could speak with him or text message him. She also had Jones's employer's name and telephone

3

number, and she said she spoke to his employer in September 2020. On the occasions that Jones met with Patterson, she confirmed that his address and telephone number had not changed. And, as far as she knew, his contact information was the same at the time of the hearing on the State's motion. Over Jones's objection, a data sheet was admitted into evidence as a business record. It contained Jones's personal information, along with chronological notes showing the department's interactions with Jones, its attempts to contact him, and in some instances, his failure to communicate with the department despite the court's order to do so.

Before the trial court made its ruling on the State's motion to revoke, Jones asked the trial court if he could also argue the merits of his motion to dismiss. The State objected to Jones's request, maintaining that his request and motion were untimely.[1] The trial court overruled the State's objection, proceeded to hear Jones's argument, and subsequently denied Jones's motion to dismiss. It then revoked Jones's community supervision, sentenced him to 365 days in jail, with twenty days' credit for time served, and ordered him to pay a fine, court costs, and fees.

## II.     Discussion

The State filed its motion to revoke Jones's community supervision on November 13, 2020, and a warrant for his apprehension issued that same day. Jones's community supervision was set to expire on April 22, 2021. Even so, Jones was not arrested on the State's revocation warrant until August 10, 2021, almost four months after his supervision should have expired.

"At common law, a trial court's jurisdiction over a motion to revoke did not extend beyond the expiration of a defendant's community supervision unless the motion had been filed

---

[1]Apparently, Jones gave his motion to the clerk for filing on the day of the revocation hearing.

4

and a capias or arrest warrant issued within the supervision period." *Garcia v. State*, 387 S.W.3d 20, 22 (Tex. Crim. App. 2012) (citing *Peacock v. State*, 77 S.W.3d 285, 287 (Tex. Crim. App. 2002), *superseded by statute*, Act of May 30, 2003, 78th Leg., R.S., ch. 250, § 3, 2003 Tex. Gen. Laws 1158, 1158 (repealed 2015) (recodified at TEX. CODE CRIM. PROC. art. 42A.756), *as recognized in Garcia*, 387 S.W.3d at 22.). "It was a defense to revocation that, in executing the capias or warrant and securing a hearing on its motion, the State had failed to exercise 'due diligence,' which required 'reasonable investigative efforts . . . to apprehend the person sought.'" *Id.* at 22 (citing *Peacock*, 77 S.W.3d at 287–88). "The burden was on the defendant to raise the defense, but once he did so, the burden shifted to the State to prove due diligence by a preponderance of the evidence." *Id.* (citing *Brecheisen v. State*, 4 S.W.3d 761, 763 (Tex. Crim. App. 1999), *superseded by statute*, Act of May 30, 2003, 78th Leg., R.S., ch. 250, § 3, 2003 Tex. Gen. Laws 1158, 1158 (repealed 2015) (recodified at TEX. CODE CRIM. PROC. art. 42A.756), *as recognized in Garcia*, 387 S.W.3d at 22).

Effective June 18, 2003, the Texas Legislature amended Article 42.12 of the Texas Code of Criminal Procedure and replaced the "common-law due diligence defense." *Id.* at 23. The Texas Legislature added Section 24, which states,

> For the purposes of a hearing under . . . 21(b), it is an affirmative defense to revocation for an alleged failure to report to a supervision officer as directed or to remain within a specified place that a supervision officer, peace officer, or other officer with the power of arrest under a warrant issued by a judge for that alleged violation failed to contact or attempt to contact the defendant in person at the defendant's last known residence address or last known employment address, as reflected in the files of the department serving the county in which the order of community supervision was entered.

5

Act of May 30, 2003, 78th Leg., R.S., ch. 250, § 3, 2003 Tex. Gen. Laws 1158, 1158 (repealed 2015) (recodified at TEX. CODE CRIM. PROC. art. 42A.756). The statute addressed only revocation proceedings that occurred beyond the expiration of the term of community supervision. *Garcia*, 387 S.W.3d at 25.[2]

Among other things, Section 24 of Article 42.12 shifted the burden of proof to the defendant and limited its use to allegations of failure to report to a supervision officer as directed or to remain within a specified place. *Id.* at 23–24 (citing TEX. CODE CRIM. PROC. ANN. art. 42.12, § 24, which was subsequently repealed and later recodified as TEX. CODE CRIM. PROC. ANN. art. 42A.756). "By contrast, the common-law due-diligence requirement applied to all revocation allegations." *Id.* at 24 (citing *Peacock*, 77 S.W.3d at 288).

The Legislature has since repealed Article 42.12, effective January 1, 2017. It also enacted Chapter 42A as part of a non-substantive revision of the community-supervision laws. Article 42A.756, entitled "Due Diligence Defense," states,

> For the purposes of a hearing under Article 42A.751(d), it is an affirmative defense to revocation for an alleged violation based on a failure to report to a supervision officer as directed or to remain within a specified place that no supervision officer, peace officer, or other officer with the power to arrest under a warrant issued by a judge for that alleged violation contacted or attempted to contact the defendant in person at the defendant's last known residence address or

---

[2]In *Garcia*, the court explained,

> The legislative history reveals that the Legislature intended to replace the common-law requirement with the due-diligence statute to reallocate the burden of proof in those instances in which the State has timely alleged violations but has not arrested the defendant before the community-supervision period expired. Furthermore, the history suggests that the legislation was intended to enhance the public's safety by permitting the government greater leeway to pursue those violators who have failed to comply with their conditions of community supervision.

*Garcia*, 387 S.W.3d at 25.

6

> last known employment address, as reflected in the files of the department serving the county in which the order of community supervision was entered.

TEX. CODE CRIM. PROC. ANN. art. 42A.756 (Supp.). Like former Section 24 of Article 42.12, the due diligence defense contained in Article 42A.756 is applicable only to revocations involving allegations of failure to report or failure to remain within a specified place.

Here, the trial court's ruling was based on additional violations other than the failure to report or failure to remain in a specified place, namely (1) failure to pay court costs, fines, and attorney fees; (2) failure to pay community supervision fees; (3) failure to submit to a substance abuse evaluation and participate in treatment as determined by his community supervision officer; and (4) failure to complete a twelve-hour DWI education course. Consequently, even assuming, without finding,[3] that the State did not exercise due diligence in locating and arresting Jones, the trial court did not abuse its discretion because a due diligence defense was not available to Jones with respect to the violations that were alleged in this case.

That said, proof by a preponderance of evidence as to any one of the alleged violations of his conditions of community supervision was sufficient to support the trial court's decision to revoke Jones's community supervision. *See Leach v. State*, 170 S.W.3d 669, 672 (Tex. App.—Fort Worth 2005, pet. ref'd) (citing *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980)). Here, after hearing testimony in support of the allegations contained in the

---

[3]The record shows that the department attempted to contact Jones before and after it filed its motion to revoke and the court issued the arrest warrant for Jones. Among other ways, it sent text messages to Jones and attempted to contact him by telephone. On January 11, 2021, after failing to make contact with him, Jones's classification was changed to "[a]bsconder." The department was not responsible for Jones's refusal to comply with the department's requests or the court's orders.

State's motion to revoke Jones's community supervision, the trial court determined that all the allegations were true.

We, therefore, overrule Jones's sole point of error.

## III. Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted: April 6, 2022
Date Decided: May 6, 2022

Do Not Publish